**M. B. GURAN COMPANY, INC.,**
**Plaintiff-Appellant,**

v.

**CITY OF AKRON et al.,**
**Defendants-Appellees.**

No. 75–2258.

United States Court of Appeals,
Sixth Circuit.

Argued March 30, 1976.

Decided Dec. 8, 1976.

---

Norman S. Carr, Brouse & McDowell Co. L. P. A., Akron, Ohio, for plaintiff-appellant.

James R. Graves, John E. Holcomb, Asst. Law Directors, City of Akron, Akron, Ohio, for defendants-appellees.

Before CELEBREZZE, ENGEL and ADAMS *, Circuit Judges.

ENGEL, Circuit Judge.

 The principal and, we hold, controlling issue in this appeal is whether the violation by a local community of guidelines for competitive bidding as contained in a handbook of the Department of Housing and Urban Development gives rise to an implied right of action cognizable in a federal district court against that community in favor of a disappointed contractor whose

low bid was not accepted. Upon the authority of *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) and related decisions, we hold it does not and affirm the judgment of the district court.

Of the four counts in plaintiff's amended complaint in the district court, we are concerned here only with Count IV.[1] Count IV of the complaint invokes the federal question jurisdiction of the court under 28 U.S.C. § 1331. It alleges that the defendant City of Akron and its Board of Control, after having solicited competitive bids from contractors on an urban renewal project known as the "Cedar Street Contract", unlawfully awarded the contract to the H. M. Miller Construction Company, although the plaintiff, M. B. Guran Company, Inc., had submitted the lowest bid. Plaintiff charges that in refusing to award the contract to it as the lowest bidder, the City violated the provisions of the "Urban Renewal Handbook," issued by the Department of Housing and Urban Development. The handbook requires competitive bidding procedures of the local public authority (LPA) (in this case, the City of Akron), in carrying out federally funded urban renewal under Title I of the Housing Act of 1949, 42 U.S.C. § 1441 et seq. It is the alleged violation of handbook requirements which forms the sole basis for the invocation of the federal question jurisdiction of the district court.

In its prayer for relief under this count, Guran does not seek damages, but rather injunctive and declaratory judgment to enjoin the award of the Cedar Street contract to anyone other than Guran and to determine that the action of the Akron City Board of Control, in awarding the Cedar Street contract, was void.

The case was tried on the merits to the district court which then issued three sepa-

---

* Honorable Arlin M. Adams, Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

1. Counts I and II were voluntarily dismissed by the plaintiff before the trial. Count III charged that the City of Akron had "blacklisted" Guran, in its efforts over a period of ten years to bid

on city construction contracts, contrary to plaintiff's right to due process under the Fourteenth Amendment. The district court made a finding of fact that plaintiff had actually been awarded major contracts and thus determined that plaintiff was not blacklisted. This finding is not challenged on appeal.

rate opinions, each reflecting a fairly distinct reason for the court's conclusion that the defendants were not obligated under federal law to award the contract to Guran. The court's memorandum opinion of July 31, 1975, while recognizing that a federal agency may be enjoined from violating its own regulations, held that Akron was not a federal agency and hence "cannot be enjoined in this suit from violating the regulations of another entity." The court held that Akron had neither adopted the regulations of the HUD handbook, nor had it contractually committed itself to follow the low-bidder requirement. In a second opinion, filed September 2, 1975 and denying plaintiff's motion to alter or amend the judgment, the court, confronted with a post-trial joint exhibit which evidenced an agreement between the City of Akron and the United States requiring the award to be made to the lowest bidder, nevertheless found that Guran was at most an incidental beneficiary of that contract and was, therefore, not entitled to enforce it in federal court. In so finding the district court concluded that the contractual provision between Akron and HUD was not intended to benefit the contractor, but rather that its purpose was to "secure economy in the construction of public works", an interest of HUD, not of the contractor.[2]

Finally, on October 1, 1975, the trial court, in denying plaintiff's motion for injunction pending appeal, Rule 62(c) Fed.R. Civ.P., rejected the plaintiff's characterization of its prior opinion on September 2 as holding that the plaintiff lacked standing to enforce the contract. The court rejected plaintiff's reliance upon *Scanwell Laboratories, Inc. v. Shaffer,* 137 U.S.App.D.C. 371, 424 F.2d 859 (1970) because that case involved an effort to enjoin a federal agency from violating its own regulations. The court noted that its prior opinion had in fact "presumed standing and instead concluded that on the merits, plaintiff's claims did not entitle it to judgment".

The briefs of the parties as well as the district court's opinions reveal a certain confusion over the correct legal framework needed to analyze plaintiff's claim. In resolving this threshold question, we take our cue from the Supreme Court's procedure in *National Railroad Passenger Corp. v. National Association of Railroad Passengers,* 414 U.S. 453, 455–6, 94 S.Ct. 690, 692, 38 L.Ed.2d 646 (1974). There the plaintiff sued to enjoin a proposed discontinuance of passenger service because the discontinuance would allegedly violate the Amtrak Act, 45 U.S.C. § 501 et seq. The Court as a preliminary matter observed:

"The issue has been variously stated to be whether the Amtrak Act can be read to create a private right of action to enforce compliance with its provisions; whether a federal district court has jurisdiction under the terms of the Act to entertain such a suit; and whether the respondent has standing to bring such a suit. . . . But, however phrased, the threshold question clearly is whether the Amtrak Act or any other provision of law creates a cause of action whereby a private party such as the respondent can enforce duties and obligations imposed by the Act; for it is only if such a right of action exists that we need consider whether the respondent had standing to bring the action

2. Distinct from the claim that a provision of the HUD handbook creates a federal cause of action in favor of plaintiff is the separate question of whether the Loan and Capital Grant Contract between the City of Akron and the United States affords third-party beneficiary rights in plaintiff against Akron. Because plaintiff expressly declined to invoke the pendent jurisdiction of the district court, one might question in the first instance whether the district court properly asserted federal jurisdiction over a contractual claim between citizens of the same state. The issue is whether the existence of the federal government as the promisor requires the application of federal common law and thus whether the contractual claim can be said to arise under federal question jurisdiction. See, *Pennsylvania v. National Association of Flood Insurers,* 378 F.Supp. 1339, 1345 n. 15 (M.D.Pa.1974), modified on other grounds, 520 F.2d 11 (3rd Cir. 1975); *Miree v. United States,* 526 F.2d 679 (5th Cir. 1976), rev'd en banc, 538 F.2d 643 (5th Cir. 1976). We need not decide the issue here because we believe that under both the law of Ohio and federal common law, the district court was clearly correct in holding that plaintiff was at most an incidental beneficiary to the contract.

and whether the District Court had jurisdiction to entertain it."

Similarly here, we deem it unnecessary to decide the related questions of standing and jurisdiction but rather proceed to the controlling issue of whether the provision of the HUD Handbook for competitive bidding creates a cause of action in favor of Guran and against the City and its officers.

Section 3 of Chapter IV of the Urban Renewal Handbook provides:

After HUD clearance of the bidder to whom the contract is proposed, the contract award may be made by the LPA provided: . . . (2) The award is made *to the bidder submitting the lowest bid.* (Emphasis supplied)

We note at the outset that plaintiff is relying solely upon the handbook requirement and not upon any express provisions of the Housing Act or upon any regulations published in the Code of Federal Regulations. Likewise, because HUD is not a party defendant, we need not consider whether the provisions of the Administrative Procedure Act, 5 U.S.C. § 701 et seq., would redress the alleged wrong.[3]

The most recent expression of when a federal right of action will or will not be implied from a violation of federal law is found in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). There the Supreme Court was called upon to determine whether a private civil action for damages in federal court in favor of the shareholders of a corporation could be premised upon their claim that the directors and officers of that corporation had violated a federal criminal statute, 18 U.S.C. § 610, prohibiting corporations from making contributions in connection with any election at which presidential and vice presidential electors are to be selected. Holding that a private right of action was not implied, the Court stated several relevant factors to be considered:

"First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted', . . . that is, does the statute create a federal right in favor of the plaintiff?" (Emphasis in original)

"Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?"

"Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?"

"Finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the states, so that it would be inappropriate to infer a cause of action based solely on federal law?"

*Cort v. Ash, supra,* at 78, 95 S.Ct. at 2087.

Applying the foregoing here, it becomes apparent that no federal right of action can or should be implied.

In analyzing the Housing Act, we note the expression of Congressional interest that private industry be encouraged to participate to the fullest extent and that the housing industry's involvement will thereby contribute to a strong national economy. 42 U.S.C. § 1441. However, the class for "whose *especial* benefit the statute was enacted" must be the persons who inhabit inadequate housing. We deem the central purpose of the Housing Act to be "the elimination of substandard and other inadequate housing through the clearance of slums and blighted areas, and the realization as soon as feasible of the goal of a decent home and a suitable living environment for every American family . . ." 42 U.S.C. § 1441. See also, U.S.Code Cong. Serv. 1949, p. 1550.

Second, there is no indication of legislative intent to create the remedy sought by plaintiff. Indeed, there is an absence of any statutory regulation of the local public

---

**3.** As acknowledged by Guran in its brief before us:

HUD is not a defendant in this litigation since the federal agency is not violating its own rule. Instead, Akron is violating the HUD rule which Akron is contractually committed to obey.

We, therefore, need not determine whether HUD may be an indispensable party to the litigation. See *Boles v. Greeneville Housing Authority,* 468 F.2d 476 (6th Cir. 1972) and *Gardner v. National Housing Authority,* 468 F.2d 480 (6th Cir. 1972).

authority's contractual arrangements with a private contractor. Any analysis of the intent behind the promulgation of the Handbook regulations, leads one to the same conclusion that the district court reached in rejecting the third party beneficiary argument:

". . . purpose of such a provision is to 'secure economy in the construction of public works, to protect the public from collusive contracts, to prevent favoritism, fraud, and extravagance, and to promote actual, honest, and effective competition so that all such public contracts may be secured at lowest cost to taxpayers'."

Plaintiff's citation of the Federal Procurement Regulations, specifically § 1–2.404–1 of Title 41 as indicative of congressional intent is inapposite, "[T]hese provisions are not applicable here since they apply to cases where a governmental agency is the procuring party. These regulations do not apply where, as here, the agency is the disbursing unit of federal grants on a state project only." *Shaw-Henderson, Inc. v. Schneider,* 335 F.Supp. 1203, 1215 (W.D.Mich.1971), aff'd, 453 F.2d 748 (6th Cir.).

Third, insofar as the existence of a private cause of action would lead to numerous suits against the local authority, the construction of urban projects would be delayed and the underlying purposes of the legislative scheme would be thwarted. Cf., *Gibson & Perin Co. v. Cincinnati,* 480 F.2d 936, 942 (6th Cir.), cert. denied, 414 U.S. 1068, 94 S.Ct. 577, 38 L.Ed.2d 473 (1973).

Finally, we see this case as one which is traditionally relegated to state law. The alleged arbitrary action of a state governmental unit is peculiarly a matter of concern to the state. It is a question of state law whether a plaintiff has a right to enjoin a municipality in its award of a contract. See, e. g., O.R.C. § 735.05 (". . . the director shall make a written contract with the lowest and best bidder . . .").

Accordingly, we hold that the cited provision of the Urban Renewal Handbook creates no implied private right of action against the defendants herein by the plaintiff. In so holding we recognize, as did our court in *Gardner v. Nashville Housing Authority,* 468 F.2d 480, 481 (6th Cir. 1972) that while " 'a local urban renewal plan must comply with the requirements of the federal *Urban Renewal Manual,* . . . the determination of the compliance is solely the responsibility of HUD'." See also, *McCullough v. Redevelopment Authority of Wilkes-Barre,* 522 F.2d 858, 867 n. 27 (3rd Cir. 1975).

Finally, we reject plaintiff's contention that *Thorpe v. Housing Authority of Durham,* 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), dictates a contrary result. The plaintiff in *Thorpe* was a tenant of a federally assisted public housing project who was evicted without notification of the reasons for her eviction. The claim was that the eviction was in direct retaliation for her exercise of her First Amendment rights as elected president of a tenants' organization. The question considered by the Supreme Court was the applicability of an HUD circular requiring local housing authorities to afford notice and an opportunity to be heard to tenants prior to eviction. The Supreme Court found that HUD deemed the circular mandatory and binding on the housing authority. However, in *Thorpe,* plaintiff was not asserting that a cause of action existed under 28 U.S.C. § 1331 in favor of the tenants to compel obedience of the local housing authority to the HUD circular. Rather the plaintiff's assertion of First Amendment rights was cognizable on review from the North Carolina Supreme Court. We do not read *Thorpe* as authority for the implication of a private cause of action from an HUD regulation.

Affirmed.