**CEDAR–RIVERSIDE ASSOCIATES, INC., etc., et al., Appellants,**

v.

**The CITY OF MINNEAPOLIS and the Minneapolis Housing and Redevelopment Authority, Appellees.**

No. 78–1878.

United States Court of Appeals, Eighth Circuit.

Submitted May 16, 1979.

Decided Oct. 3, 1979.

Rehearing and Rehearing En Banc Denied Nov. 13, 1979.

James P. Larkin, Larkin, Hoffman, Daly & Lindgren, Minneapolis, Minn., for appellants; Peter K. Beck, James D. Lano, Oppenheimer, Wolff, Foster, Shepard & Donnelly, Minneapolis, Minn., on brief.

Jerome F. Fitzgerald, Asst. City Atty., Minneapolis, Minn., for appellee, City of Minneapolis; Robert J. Alfton, City Atty., on brief.

John M. LeFevre, Holmes & Graven, Minneapolis, Minn., for appellee Housing & Redevelopment Authority; John M. Utley, Minneapolis, Minn., on brief.

Before BRIGHT, HENLEY, and McMILLIAN, Circuit Judges.

BRIGHT, Circuit Judge.

Cedar-Riverside Associates, Inc., and several associated developers of the beleaguered "Cedar-Riverside New Town in Town" housing project in Minneapolis, Minnesota (collectively, appellants),[1] appeal from a judgment dismissing four of their claims against the City of Minneapolis (the City) and the Minneapolis Housing and Redevelopment Authority (the MHRA).[2] The claims at issue arose from the appellees' approval of a plan to reduce the housing

---

1. Of the numerous plaintiffs in this lawsuit, the following brought this appeal: Cedar-Riverside Associates, Inc., Cedar-Riverside Properties, Cedar-Riverside Land Corporation, Cedar-Riverside Land Co., Stage I Land Co., F. Building Land Co., and Keith Heller.

2. The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota, dismissed appellants' fifteenth through eighteenth (of nineteen) causes of action and entered a final judgment upon appropriate findings pursuant to Fed.R.Civ.P. 54(b). *Cedar-Riverside Associates, Inc. v. United States*, 459 F.Supp. 1290 (D.Minn.1978).

density permitted in the Cedar-Riverside area and their alleged diversion to other housing projects of federal funds designated for the Cedar-Riverside project.

Appellants now concede that two of the four dismissed claims, both brought directly under the fourteenth amendment, are barred by this court's decision in *Owen v. City of Independence, Mo.*, 589 F.2d 335 (8th Cir. 1978).[3] In their two remaining claims appellants allege violations of national housing policy, as expressed in the Housing Act of 1949, 42 U.S.C. § 1441 *et seq.* (1976) (the Housing Act). The Housing Act does not expressly provide a private remedy for such violations. Hence, the threshold issue presented in this appeal is whether a private remedy should be inferred on behalf of appellants. The district court concluded that it should not, *i. e.*, that appellants have no implied right of action under the Housing Act. We agree and therefore affirm.

## I. *Background.*[4]

In 1968, the Minneapolis City Council approved an Urban Renewal Plan for the Cedar-Riverside area (1968 plan) that had been prepared by the MHRA. In 1970, the MHRA selected appellant Cedar-Riverside Associates, Inc. (the developer) to develop 100 acres of private, noninstitutional land within the Cedar-Riverside Urban Renewal Area. The development plan for that land contemplated high density residential and commercial development; between 1972 and 1991, approximately 12,500 dwelling units were to be constructed or renovated. In 1971, the United States Department of Housing and Urban Development guaranteed $24,000,000 of the developer's obligations pursuant to Title VII of the Urban Growth and New Community Development Act of 1970, 42 U.S.C. § 4514 (1976).

Appellants completed the first of ten planned stages of redevelopment. In December 1973, however, environmental litigation halted further construction in the Cedar-Riverside area, and appellants have been unable to resume work on the project since that time. Nonetheless, the developer in late 1976-early 1977 indicated that it intended to proceed with the project upon conclusion of the environmental litigation. *See Cedar-Riverside Environmental Defense Fund v. Hills, supra*, 560 F.2d at 380.

In February 1977, the Minneapolis City Council established the Cedar-Riverside Task Force and assigned to it the responsibility of devising a plan for redevelopment and rehabilitation of the Cedar-Riverside area. In May 1977, the Task Force issued its report proposing, among other things, that residential development in the Cedar-Riverside area be limited to 1,900 new apartment units, 450 rehabilitated units, and 2,113 existing units. On May 19, 1977, the MHRA adopted the land use recommendations contained in the Task Force report, and the Minneapolis City Council followed suit on May 27, 1977.[5]

---

3. Appellants' seventeenth and eighteenth causes of action assert that the City and the MHRA, respectively, in adopting a plan to reduce permitted housing densities in the Cedar-Riverside area, deprived the appellants of their property without due process of law. In *Owen, supra*, we held that Congress intended 42 U.S.C. § 1983 as an exclusive remedy for constitutional violations committed by municipalities and that "no reason exists to imply a direct cause of action [for such violations] under the fourteenth amendment." *Owen v. City of Independence, Mo., supra*, 589 F.2d at 337. *Accord, Turpin v. Mailet*, 591 F.2d 426 (2d Cir. 1979) (*en banc*).

4. This court has already discussed much of the history of the Cedar-Riverside New Town in

Town project in *Cedar-Riverside Environmental Defense Fund v. Hills*, 560 F.2d 377 (8th Cir. 1977). *See also United States v. Cedar-Riverside Land Co.*, 592 F.2d 470 (8th Cir. 1979); *Bor-Son Building Corp. v. Heller*, 572 F.2d 174 (8th Cir. 1978).

5. The district court found that, notwithstanding their adoption of the Task Force report,

neither the MHRA nor the Minneapolis City Council has taken any formal action which would alter the maximum residential densities permitted by the [1968 plan] or which would amend the Minneapolis Zoning Ordinance. [*Cedar-Riverside Associates, Inc. v. United States*, 459 F.Supp. 1290, 1293 (D.Minn.1978).]

The Task Force report, as adopted by the appellees, represents a substantial departure from the original 1968 plan pursuant to which the appellants undertook to develop the Cedar-Riverside area. If implemented, the Task Force proposal would reduce the 12,500 housing units permitted in the project area under the 1968 plan to approximately 4,500 units in that same area. In addition, the report proposes substantial changes in building design, building location, and commercial development.

The delay caused by the environmental litigation already had placed the appellants in serious financial difficulties.[6] On October 19, 1977, the New Communities Development Corporation, representing the federal guarantors of the developer's debentures, resolved to initiate foreclosure proceedings on the Cedar-Riverside project.[7]

Thereafter, appellants brought this action. In the two claims remaining at issue here, appellants alleged that the City and the MHRA, in adopting the Task Force report and in administering and diverting to other projects federal funds designated for use in the Cedar-Riverside project, violated their statutory obligation under the Housing Act to exercise their powers consistently with national housing policy. Appellants further alleged that these violations contributed to appellants' financial difficulties and interfered with their contractual relations.

Holding that the Housing Act does not create a private right of action in favor of the developers of an urban renewal project, the district court granted the appellees' motions to dismiss these claims for failure to state a claim upon which relief could be granted. *Cedar-Riverside Associates, Inc. v. United States*, 459 F.Supp. 1290, 1294 (D.Minn.1978). The district court further indicated that appellants lack standing to sue for any breach of duties imposed by the Housing Act. The court reasoned that because appellants had never been the direct beneficiaries of appellees' distribution of funds in the Cedar-Riverside area, and because they could not show that any alternative distribution would have benefited them, they could not establish an injury in fact as a matter of law. *Id.* at 1295, *citing Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976).

II. *Analysis.*

Appellants characterize their fifteenth and sixteenth causes of action against, respectively, the MHRA and the City as arising

> under the New Communities Act of 1968 [42 U.S.C. § 3901 *et seq.*] and the Urban Growth and New Community Development Act of 1970 [42 U.S.C. § 4501 *et seq.*], which, in turn, incorporates portions of the original National Housing Act [Housing Act of 1949, 42 U.S.C. § 1441 *et seq.*], the specific provisions of which Plaintiffs have alleged Defendant City of Minneapolis and MHRA with violating.

Although the appellants' argument on this point is somewhat vague, the "specific provision" of the Housing Act which the appellees allegedly violated apparently is the directive in 42 U.S.C. § 1441 which reads, in pertinent part, as follows:

> The Department of Housing and Urban Development, and any other departments or agencies of the Federal Government having powers, functions, or duties with respect to housing, shall exercise their powers, functions, and duties under this or any other law, consistently with the national housing policy declared by this Act and in such manner as will facilitate sustained progress in attaining the na-

---

6. Appellants allege that the City and the MHRA exacerbated their financial difficulties through improper application of federal funds. For instance, appellants claim that the MHRA illegally diverted to other projects more than $1,200,000 of federal neighborhood development program funds earmarked for Cedar-Riverside.

7. The United States subsequently brought an action to foreclose mortgages on property held by the appellants in connection with the Cedar-Riverside project. *See United States v. Cedar-Riverside Land Co.*, 592 F.2d 470 (8th Cir. 1979).

tional housing objective hereby established * * *.

We assume, for the purpose of reviewing the district court's dismissal of appellants' claims for legal insufficiency, that 42 U.S.C. § 1441 applies to the City and the MHRA and that the appellees' approval of the Task Force plan and their diversion to other projects of federal funds earmarked for the Cedar-Riverside area violated this statutory directive.[8] We hold, however, that the Housing Act confers on the appellants no right of action to redress such violations.

The Supreme Court in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), listed four factors that are relevant in "determining whether a private remedy is implicit in a statute not expressly providing one[:]"

> First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," * * * (emphasis supplied) —that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? * * * Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? * * And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? [422 U.S. at 78, 95 S.Ct. at 2088.]

Applying these criteria in this case, we determine first that appellants do not belong to a class for whose especial benefit

Congress enacted the Housing Act. If Congress intended the Housing Act to benefit any particular class of persons, that class must be the inhabitants of inadequate housing, not private developers of housing projects. *M.B. Guran Co., Inc. v. City of Akron*, 546 F.2d 201, 204 (6th Cir. 1976). *See* 42 U.S.C. § 1441 (1976).[9]

Appellants contend that the New Communities Act of 1968 (1968 Act) and the Urban Growth and New Community Development Act of 1970 (1970 Act) brought private housing developers within the class intended to be benefited by the Housing Act's housing policy directive. Although the legislative history of the 1968 and 1970 Acts indicates a congressional purpose to encourage private entrepreneurs in local home building industries, that history also discloses that Congress intended such assistance to private developers to serve as a means of achieving the underlying goal of the Housing Act; namely, additional well-planned housing for the benefit of the public. *See, e. g.*, S.Rep.No. 1123, 90th Cong., 2d Sess. 48; H.Rep.No. 1585, 90th Cong., 2d Sess. *reprinted in* [1968] U.S. Code Cong. & Admin. News 2873, 2877 (1968 Act). We conclude that the 1968 and 1970 Acts were not intended especially to benefit private developers such as the appellants.

Second, we find in these statutes no indication of legislative intent to create an implied right of action. The directive in 42 U.S.C. § 1441 relied upon by appellants simply calls upon federal agencies to act consistently with the purposes of the Housing Act. Although the statute does not expressly deny a right of action to develop-

---

8. A substantial question exists whether the City or the MHRA acted as "other * * * agencies of the Federal Government" within the meaning of 42 U.S.C. § 1441. The district court treated that question as one of fact and took the appellants' allegation that § 1441 applies as admitted for purposes of the motion to dismiss. We do not reach this issue.

9. That statute provides in part:

   § 1441. *Congressional declaration of national housing policy*

   The Congress declares that the general welfare and security of the Nation and the

health and living standards of its people require housing production and related community development sufficient to remedy the serious housing shortage, the elimination of substandard and other inadequate housing through the clearance of slums and blighted areas, and *the realization as soon as feasible of the goal of a decent home and a suitable living environment for every American family*, thus contributing to the development and redevelopment of communities and to the advancement of the growth, wealth, and security of the Nation. [Emphasis added.]

ers, the generality of its language weighs against implication of a private remedy. As the Supreme Court noted in *Touche Ross & Co. v. Redington*, —— U.S. ——, ——, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979), in those cases finding such implied private remedies [in statutes not expressly providing them], the statute in question at least prohibited certain conduct or created federal rights in favor of private parties.

Like the statute construed in *Touche Ross*, 42 U.S.C. § 1441 neither confers rights on private parties nor proscribes specific conduct. The directive in section 1441 accordingly provides no warrant for the remedy appellants seek.

With respect to the third factor in *Cort v. Ash*, we believe that implication of a private remedy would not advance the purposes underlying the legislative scheme. The primary purpose of the legislative scheme is to upgrade the nation's housing. The existence of a private cause of action would not further this purpose; rather, as the court observed in *M.B. Guran Co., Inc. v. City of Akron, supra*, 546 F.2d at 205, it would predictably lead to many suits against local housing authorities, suits resulting in long delays in the construction of new and better housing units. Moreover, such lawsuits would require courts to determine both the objectives of national housing policy and the means appropriate for their realization. Housing policy is continuously evolving; its contours are better defined by those intimately involved in its development and implementation, namely legislative bodies and executive agencies. Regardless of the merits of appellants' complaints regarding official behavior in this case, judicial supervision is not in keeping with the purposes underlying the Housing Act.

Finally, we observe that appellants' cause of action is one traditionally relegated to state law. The essence of their claim is that appellees, by failing to follow established housing policy, interfered with their contractual relations. Such interference may be tortious, *see* W. Prosser, *Handbook of the Law of Torts* § 129 (4th ed. 1971), but tort is traditionally a state-law matter. The interest of federal law is secondary. Moreover, "[t]he alleged arbitrary action of a state governmental unit is peculiarly a matter of concern to the state." *M.B. Guran Co., Inc. v. City of Akron, supra*, 546 F.2d at 205. Unless such an action implicates fundamental federal principles, state law should determine the appropriate remedy. *See id.*

Appellants argue that these conclusions are contrary to the reasoning, if not the holdings, of cases in other circuits. The cases cited by appellant are not controlling. Although *Gardner v. Nashville Housing Authority*, 468 F.2d 480 (6th Cir. 1972), indicates that federal courts have subject-matter jurisdiction to hear claims arising under the Housing Act, the *Gardner* court did not address the issue of whether the Housing Act provides a private remedy. In *McCullough v. Redevelopment Authority of Wilkes-Barre*, 522 F.2d 858, 867 n. 27 (3d Cir. 1975), the court did not reach the private remedy issue and, indeed, expressed doubt about appellants' position. Finally, *Sierra Club v. Lynn*, 502 F.2d 43 (5th Cir. 1974), *cert. denied*, 421 U.S. 994, 95 S.Ct. 2001, 44 L.Ed.2d 484, and 422 U.S. 1049, 95 S.Ct. 2668, 45 L.Ed.2d 701 (1975), does not support appellants' position. The plaintiffs there sought declaratory and injunctive relief under provisions of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*

We find the discussion in *M.B. Guran Co., Inc. v. City of Akron, supra*, 546 F.2d 201, to be more helpful. There the court applied the *Cort v. Ash* criteria to the Housing Act and concluded that a disappointed public works contractor had no implied right of action against a community for its failure to follow HUD guidelines concerning competitive bidding. Although the facts of that case and those of the one at hand are not identical, the issue presented is the same. We are persuaded that the court's reasoning in *Guran* is sound and should be followed here.

We conclude that the district court was correct in its determination that the provi-

sions of the Housing Act of 1949, 42 U.S.C. § 1441 *et seq.*, confer no private right of action upon a housing developer in the circumstances of this case.[10]  Accordingly, we affirm the judgment of the district court dismissing appellants' fifteenth through eighteenth cases of action.

10.  In view of this conclusion, we find it unnecessary to decide whether the appellants had standing to bring this action.  *See National*

*Railroad Passenger Corp. v. National Association of Railroad Passengers,* 414 U.S. 453, 456, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974).