**Barbara FALZARANO et al.,**
**Plaintiffs-Appellants,**

**v.**

**UNITED STATES of America et al.,**
**Defendants-Appellees.**

No. 78–1512.

United States Court of Appeals,
First Circuit.

Argued April 2, 1979.

Decided Oct. 2, 1979.

**508**

Brian Michael Olmstead, East Boston and Mitchell I. Greenwald, Pittsfield, Mass., with whom Susan S. Beck, Lexington, Mass., Gershon M. Ratner, Boston, Mass., Arthur L. Johnson, Jamaica Plain, Mass. and Roy Jack Watson, Jr., Boston, Mass., were on briefs for appellants.

Richard D. Glovsky, Asst. U. S. Atty., Chief, Civ. Div., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief for Federal appellees.

Jeffrey B. Rudman, Boston, Mass., with whom Thomas D. Herman, and Hale & Dorr, Boston, Mass., were on brief for Max Kargman, et al., appellees.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

Plaintiffs-appellants are certain tenants in two federally subsidized housing projects located in Boston. They filed a class action suit against the United States, the Secretary of Housing and Urban Development (HUD), and the Acting Director of the HUD Area Office in Boston. They named as private defendants the owners and managers of the two housing projects, Max and William Kargman, High Point Village Company, Brandywyne Village Company, First Realty Management Corporation, First Realty Corporation of Boston, and Lease-All Corporation.

The original complaint was 240 pages long. It alleged a scheme of siphoning funds by the private defendants from the projects in excess of the legally permissible limits and the federal defendants' acquiescence in the scheme. As a result of the scheme, plaintiffs averred that they had to pay excessively high rents and live in deteriorated housing.

The defendants moved to dismiss the complaint on three grounds: lack of jurisdiction, Fed.R.Civ.P. 12(b)(1); failure to state a claim, Fed.R.Civ.P. 12(b)(6), on the basis that our decision in *Hahn v. Gottlieb*, 430 F.2d 1243 (1st Cir. 1970), disposed of the matter; and on the further ground that the complaint failed to comply with the requisites of Fed.R.Civ.P. 8(a), which calls for a "short and plain statement of the claim[.]" The district court granted the motion to dismiss for failure to state a claim, also noting that the prolixity of the complaint offended Fed.R.Civ.P. 8(a). Plaintiffs have appealed from the dismissal. After filing the appeal, plaintiffs moved to vacate the dismissal with leave to amend the complaint and substitute an abbreviated complaint of 70 pages with a 40 page attached appendix. The district court denied the motion, stating that the amended complaint did not clear the hurdles posed by the original complaint.[1]

We treat first the jurisdictional question. Plaintiffs forward several bases for asserting their claims against the private defendants in a federal forum: (1) an implied right of action under the National Housing Act, 12 U.S.C. § 1715*l*(d)(3); (2) as third party beneficiaries of the regulatory agreement between the landlords and HUD; (3) under their lease, which incorporates the regulatory agreement by reference; (4) under the fourteenth amendment, for deprivation of their rights under color of state law. Jurisdiction is claimed under 28 U.S.C. §§ 1331, 1343, 1337, and 1361.

---

1. The district court expressed reservations as to whether it could act on the motion since an appeal was then pending in this court. This ambiguity has been resolved by our recent case of *Commonwealth of Puerto Rico v. S.S. Zoe Colocotroni*, 601 F.2d 39 (1st Cir. 1979) (permissible to file motion for relief from judgment pursuant to Fed.R.Civ.P. 60(b) while appeal is pending without first seeking leave from the court of appeals).

Each of the cited statutes requires that the cause of action be tethered to either a substantive statute or the federal constitution. We examine each of the four grounds advanced by plaintiffs to determine if any provides them the right to proceed in a federal court.[2]

## A.

The National Housing Act, 12 U.S.C. § 1715*l* (d)(3), does not expressly provide for a private right of action. That section reads in pertinent part:

(d) To be eligible for insurance under this section, a mortgage shall—

.    .    .    .    .

(3) if executed by  .   .   .  a private nonprofit corporation or association, or other mortgagor approved by the Secretary, and regulated or supervised under Federal or State laws  .   .   . , or agencies thereof, or by the Secretary under a regulatory agreement or otherwise, as to rents, charges, and methods of operation, in such form and in such manner as in the opinion of the Secretary will effectuate the purposes of this section—

.    .    .    .    .

(ii) not exceed [certain set sums, established by law] [.]

By its terms, the statute does not create a right of action in favor of anyone. *See Touche Ross & Co. v. Redington,* —— U.S. ——, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). It does, however, proscribe mortgages in excess of the legally permissible per unit limit. There has been no allegation that the mortgages executed on the projects exceed the statutory limits; rather, the claim is that the rents are excessive and the physical plant unsafe and unclean due to monies taken illegally from the projects by the landlords. The language of the statute neither creates federal rights in favor of any private party nor proscribes the behavior herein complained of. Therefore, the im-propriety of inferring a federal cause of action from the statute seems clear. This view is buttressed by an application of the analysis of the factors set forth in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), for determining whether a cause of action can be inferred from a statute not expressly providing for one.

We first determine whether plaintiffs constitute the class for whose especial benefit the statute was passed. Low and moderate income tenants are indisputably the prime beneficiaries of the National Housing Act. 42 U.S.C. §§ 1441, 1441a. They are not the sole beneficiaries, however, since Congress decided to utilize the private sector to provide the necessary housing and made mortgage insurance and below-market interest rates available to encourage private enterprise to enter the low and moderate income housing market. 12 U.S.C. § 1715*l* (a), (d)(5). We think this case is governed by *Touche Ross & Co. v. Redington, supra,* —— U.S. ——, 99 S.Ct. 2479, 61 L.Ed.2d 82, where the Court found no implied cause of action in section 17(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78q(a). There, investors had sought damages against accountants who had audited securities brokerage firms. The financial reports contained errors and the customers sought to recover from the auditors when the collapse of the firm deprived them of the full value of their deposits and assets held by the bankrupt brokerage firm. By statute, the brokerage firms were required to keep books and records and submit reports as the SEC might require "as necessary and appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78q(a) (as it read in 1972, the date in question). Although the statute spoke clearly in terms of protecting the public, the Court found that injured investors had no cause of action, finding that the intent of the statute was to provide sufficient data to the SEC so that it would have an early warning of financial

---

**2.** In their proposed amended complaint, plaintiffs suggest that their claim arises under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* The APA is not available as an inde-pendent grant of subject matter jurisdiction. *Califano v. Sanders,* 430 U.S. 99, 104–07, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

troubles and thus be able to take protective action before financial collapse. Even when, as in the case before the Court, the statute was unsuccessful in achieving its goal, investors could not bring suit for damages against anyone. *Touche Ross, supra,* —— U.S. at ——, 99 S.Ct. 2479.

Here also, while the statute states that the Secretary shall establish permissible rents and charges, no cause of action is created on behalf of the tenants. Continued financial viability of the project is a prime concern of the statute since the government, as insurer of the mortgages, will bear the brunt should there be a default. By authorizing the Secretary to set rents and charges the statute attempts to assure adequate return sufficient to prevent foreclosure while also keeping a lid on rents for the benefit of low and moderate income tenants. *See Kargman v. Sullivan,* 552 F.2d 2, 12 (1st Cir. 1977); 24 C.F.R. § 221.531(c). The statute does not purport to grant to the residents of the projects the right to sue for impermissible charges. Authority is given to the Secretary to seek enforcement if necessary. 12 U.S.C. § 1702.[3]

The second *Cort* factor leads us to examine if there is any indication of legislative intent to create or deny a private remedy. The parties agree that neither the statute nor the legislative history indicates that Congress intended to create or deny a private right of action. Where, as here, the plain language of the statute "weighs against implication of a private remedy, the fact that there is no suggestion whatsoever in the legislative history that [the Act] may give rise to suits for damages reinforces our decision not to find such a right of action implicit within [the Act]." *Touche Ross, supra,* —— U.S. at ——, 99 S.Ct. at 2487.

The next factor is whether a private right of action would be consonant with the overall legislative scheme. By providing for below-market interest rates and insur-

ing the mortgages, the Act manifests an intent to stimulate the private sector's entry into constructing and operating housing projects for low and moderate income tenants. To safeguard the federal fisc against possibly disastrous exposure should the insured mortgages be foreclosed, the Secretary of HUD is permitted to regulate rents, charges and methods of operation. An overriding concern is to guarantee that the rents and charges adequately cover the carrying costs of the projects. The discretion granted to the Secretary is broad indeed: the Secretary may determine both the form and manner of regulation which, in his or her opinion, will effectuate the purposes of section 1715*l.* Tenants are guaranteed certain notice and hearing rights, particularly with respect to rent increases. 24 C.F.R. §§ 401.1–401.5. Permitting tenants to bring suit when they differ with the Secretary's determinations as to the adequacy of rents and charges would not, we think, harmonize with the Act's intent. *See Hahn v. Gottlieb, supra,* 430 F.2d 1243. Tenants are protected from excessive rents since they are able to obtain federal supplements in certain instances to cover rent increases.

The overall statutory scheme suggests that no private right of action exists. Unlike the Securities and Exchange Act of 1934, the National Housing Act contains no "standards of conduct that a private action could help to enforce," nor does it contain any "general grant of jurisdiction to the district courts." *Securities Investor Protection Corp. v. Barbour,* 421 U.S. 412, 424, 95 S.Ct. 1733, 1740, 44 L.Ed.2d 263 (1975). It is thus distinguishable from Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.,* which the Court this term determined to contain an implied private right of action. *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). Title IX specifically enjoins sex discrimination in education programs receiving federal funds and explicitly

---

**3.** This section, which states that the Secretary shall be authorized to "sue and be sued in any court of competent jurisdiction, State or Federal[ ]", does not operate as a basis for a private

right of action. *Securities Investor Protection Corp. v. Barbour,* 421 U.S. 412, 420–21 n. 3, 95 S.Ct. 1733, 44 L.Ed.2d 263 (1975).

bestows a benefit upon people discriminated against on the basis of sex. *Id.* 441 U.S. at 677, 99 S.Ct. 1946. There is no similar creation of benefits for the tenant class in the case before us.

We are not unsympathetic to plaintiffs' claims, which—as we must in a motion to dismiss—we take as true. However, in the absence of a justiciable claim, we are not empowered to act. The statute does not grant a private right of action.

### B.

█ Plaintiffs allege that they are entitled to recover on the grounds that they are third party beneficiaries of the regulatory agreement between HUD and the landlords. This theory has been raised and rejected before. In *Harlib v. Lynn,* 511 F.2d 51 (7th Cir. 1975), the court rejected tenants' argument that they were third party beneficiaries of the regulatory agreement since the agreement did not specify in any fashion notice or hearing rights for tenants. *Id.* at 55–56. *See also Boston Public Housing Tenants Policy Council, Inc. v. Lynn,* 388 F.Supp. 493, 496 (D.Mass.1974); *Fenner v. Bruce Manor, Inc.,* 409 F.Supp. 1332, 1349 (D.Md.1976); *Feldman v. HUD,* 430 F.Supp. 1324, 1328 (E.D.Pa.1977). *Cf. McCullough v. Redevelopment Authority of Wilkes-Barre,* 522 F.2d 858, 867–68 n. 27 (3rd Cir. 1975) (owners of property damaged by hurricane not third party beneficiaries to contract between HUD and the local Authority).

Our inquiry must be whether plaintiffs were intended beneficiaries under the regulatory agreement, as merely incidental beneficiaries cannot sue to enforce the contract. Restatement of Contracts § 145; 4 Corbin on Contracts §§ 774, 775, 776, 779C (1951). The regulatory agreements at issue here do not disclose an intent to benefit the tenants, except as they might be incidental beneficiaries; nor can the tenants qualify as either creditor or donor beneficiaries. There is, therefore, no basis for federal jurisdiction grounded on a third party beneficiary theory.

### C.

█ Plaintiffs claim that they have a federal cause of action because their lease agreements with the private defendants incorporate the regulatory agreements between the landlords and HUD. Plaintiffs did not rely on this as a basis for federal jurisdiction in the court below; they are, therefore, effectively foreclosed from raising it before us. *Johnston v. Holiday Inns, Inc.,* 595 F.2d 890 (1st Cir. 1979).

### D.

█ We are finally asked to find a violation of the fourteenth amendment's prohibition against denial of due process. The fourteenth amendment's proscription runs only against states, not against private entities. Plaintiffs allege that, since the landlords are regulated with respect to zoning variances, reduced utility rates, payment of taxes and the like, they are operating under color of state law. This is an insufficient allegation of state action to involve the fourteenth amendment. *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 171–79, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). None of these activities is "so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action." *Evans v. Newton,* 382 U.S. 296, 299, 86 S.Ct. 486, 488, 15 L.Ed.2d 373 (1966). Even though the housing projects have received certain benefits from the state such as reduced utility rates and reduced taxation, this does not create a "symbiosis" between state and public action. *See Fortin v. Darlington Little League, Inc.,* 514 F.2d 344, 347 (1st Cir. 1975). *See also Burton v. Wilmington Parking Authority,* 365 U.S. 715, 722–26, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). The projects are privately owned and operated, albeit regulated in some operational respects by federal overseers. The badge of "public entity" cannot fairly be attached to them. There has been no allegation that the property was purchased by the private defendants from the state following urban renewal condemnation proceedings, where the law

requires that restrictions be placed on the further use and disposition of the property, 42 U.S.C. §§ 1460(c)(4), 1455, 1457, *compare McQueen v. Druker,* 438 F.2d 781, 783 (1st Cir. 1971), or that constitutionally protected activities such as free speech are being imperilled. *Compare id.* Even had there been the requisite showing of state involvement, plaintiffs have failed to show a legal entitlement or property interest such as to trigger constitutional guarantees. *Hahn v. Gottlieb, supra,* 430 F.2d at 1247.

## II. *Have Plaintiffs Stated A Claim Against HUD?*

Plaintiffs attempt to hurdle the bar posed by our decision in *Hahn v. Gottlieb, supra,* 430 F.2d 1243. They assert that they are not challenging HUD's approval of a rent increase, as was the case in *Hahn.* Rather, they claim they are challenging the pervasive failure of HUD to enforce its own regulations. At the outset we recognize the bias in favor of judicial review. *Morris v. Gressette,* 432 U.S. 491, 501, 97 S.Ct. 2411, 53 L.Ed.2d 506 (1977); *Abbott Laboratories v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). If, however, the action has been entirely committed by statute to administrative discretion, review is precluded. 5 U.S.C. § 701(a)(2). If the matter can be resolved solely on the basis of "matters within the special competence of the Secretary[ ]", *Barlow v. Collins,* 397 U.S. 159, 166, 90 S.Ct. 832, 837, 25 L.Ed.2d 192 (1970), it is fair to determine that the matter falls within the narrow range of cases not reviewable by courts. Indeed, a "command" of nonreviewability may be inferred from the statute's purpose. *Id.* at 167, 90 S.Ct. 832; *Switchmen's Union of North America v. National Mediation Board,* 320 U.S. 297, 301–07, 64 S.Ct. 95, 88 L.Ed. 61 (1943).

Plaintiffs aver that the amounts taken by the private defendants to cover the costs of managing and maintaining the two housing projects are excessive because of phantom costs such as salaries to the individual defendants greatly in excess of any actual services performed, higher than normal charges by the owners' subsidiary leasing corporation, characterizing certain charges as maintenance rather than capital expenses, and inflating the land value of the projects. We accept as true these allegations. Nonetheless, the Secretary of HUD has determined that the charges are permissible. No more than we were able to assess the fairness and equity of rent increases in *Hahn* are we able to assess the propriety of the complained of charges by the private defendants. As stated above, the Secretary of HUD is concerned not only with the level of rents in the housing projects, but also with the projects' continuing financial viability lest the government be called on to assume the costs of the mortgage as insurer.[4] How the Secretary makes this decision involves a balancing of factors and a consideration of complex financial data which we are ill-equipped to second guess. What plaintiffs in fact are stating is not that the Secretary has failed to regulate the projects, but rather that plaintiffs differ with the *manner* in which that regulation is carried out. This places them squarely within *Hahn. See also Haas v. Howard,* 579 F.2d 654, 658 (1st Cir. 1978). HUD has not ignored a plain statutory duty, it has merely interpreted that duty in a fashion other than what plaintiffs consider proper. This does not escape the holding of *Hahn.*

The principles enunciated in *Hahn* for ascertaining the applicability of judicial review are: appropriateness of the issue for judicial review; need for judicial supervision to safeguard plaintiffs' interests; and impact of review on agency's effectiveness in carrying out its mandate. 430 F.2d at 1249. The level of charges—whether characterized as an illegal siphoning of funds or higher than normal charges—is clearly outside the scope of normal judicial competence. We are not able to calculate appropriate rates of return and decipher from quantities of financial data which charges

---

4. Plaintiffs state that the mortgages have been in default or under modification since 1971 and 1973.

are legitimate and which not. This is a managerial function with which the Secretary has been encharged and which is inappropriate for courts to assume.

As we noted in *Hahn,* plaintiffs' interests are worthy of protection. However, we cannot say any more clearly here what we said there: the statutory scheme does not provide tenants with detailed statutory protection or categorical assistance, but instead attempts to address tenants' needs indirectly, both through subsidized private housing and rental supplements. Plaintiffs allege that rents have been raised 40% since 1974 and that physical deterioration is daily occurring at the projects. These allegations are serious and troublesome. And yet, the constraints in *Hahn*—the delays attendant on judicial resolution of controversies such as this, the courts' inability to adequately sift through detailed and complicated financial and managerial data, and the possibility of landlord appeals from decisions favorable to tenants—operate with equal force here. If plaintiffs were able to find instances of the agency's avoiding mandatory duties, our role would be clear. The allegations we have been presented with, however, amount to arguments that HUD has erred in allowing the landlords to take out certain monies from the project and has erroneously approved certain charges.[5] This falls short of a showing that HUD has ignored a clear statutory command.

The discretionary nature of the Secretary's duties and the dual goals of assuring financial integrity of the project and maintaining reasonable rents for low and moderate income tenants require a flexibility and ability to deal individually with each project. Close judicial supervision of approval of charges, categorization of charges into one account rather than another, and other formalizations of the decision making process would impede agency action. *See*

*Hahn,* 430 F.2d at 1250; *see also Langevin v. Chenango Court, Inc.,* 447 F.2d 296, 303 (2d Cir. 1971). Although we find that permitting judicial review of managerial-type decisions would hamper the administrative process, we are not unmindful of—as phrased by Hamlet—the "insolence of office" and the law's delay. The picture which emerges of HUD's treatment of the tenants' complaints is not conducive to confidence in the administrative machinery's ability or willingness to be responsive and responsible to persons dependent upon it for a fair and equitable resolution of their problems. This lack of confidence is in no way dissipated by the treatment of the case in HUD's brief to this court. We hope HUD will be mindful of its duties and solicitous in carrying them out.

For the reasons discussed above, mandamus is not available to the plaintiffs. 28 U.S.C. § 1361. Only when the duty is clear and unmistakable is the extraordinary remedy of mandamus appropriate. *Cervoni v. HEW,* 581 F.2d 1010, 1019 (1st Cir. 1978); *Association of American Medical Colleges v. Califano,* 569 F.2d 101, 110–14 n. 80 (D.C. Cir. 1977). The Secretary's decision regarding the rents and charges at the two projects is not properly a subject for mandamus jurisdiction in the posture presented to us.

We conclude with the obvious. There is no fifth amendment denial of due process since plaintiffs have shown no protected property interest. *Hahn v. Gottlieb, supra,* 430 F.2d at 1247.

*The order of the district court is affirmed.*

---

**5.** Plaintiffs cite several cases holding that violations of the regulatory agreements between the landlord and HUD can be enforced via judicial review. Those cases are all distinguishable from the instant one in that the party suing to enforce the agreement was either the United States or the landlords themselves who were

suing the United States or the FHA. In no case cited by plaintiffs was suit brought by the tenants to enforce the agreement. *See, e. g., United States v. Haddon Haciendas Co.,* 541 F.2d 777 (9th Cir. 1976); *Bulls v. United States,* 356 F.2d 619 (5th Cir. 1966); *Loftus v. Mason,* 240 F.2d 428 (4th Cir. 1957).