Dennis SHIVERS, et al., Appellants,

v.

Moon LANDRIEU, in his Official Capacity as Secretary, U. S. Department of Housing and Urban Development, et al.

No. 79–1880.

United States Court of Appeals,
District of Columbia Circuit.

Argued 29 Jan. 1981.

Decided 27 March 1981.

Florence Wagman Roisman, Washington, D. C., with whom Ilene J. Jacobs and Paula D. Scott, Washington, D. C., were on brief for appellants.

Regina C. McGranery, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry and Michael W. Farrell, Asst. U. S. Attys., Washington, D. C., were on brief for appellee, Secretary, U. S. Dept. of Housing and Urban Development.

J. Jonathan Schraub, Washington, D. C., with whom Warren K. Kaplan, Washington, D. C., was on brief for appellees, Garfield Development Corp., et al.

Susan R. Baron, Washington, D. C., with whom Richard O. Duvall, Washington, D. C., was on brief for appellee, Institutional Securities Corp.

John Evans, Washington, D. C., was on brief for appellee, Hessick Inv. Corp.

E. William Furey, Chevy Chase, Md., was on brief for appellee, Karl W. Corby & Co., Inc.

Before MacKINNON, WILKEY and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILKEY.

WILKEY, Circuit Judge:

This appeal involves a thirty-year old housing complex in southeast Washington, D.C., known as "Garfield Hill Apartments." Appellants are past and present tenants of the 104-unit project who complain of evictions, high rents, and deficient maintenance standards, etc. Appellants brought suit in the U.S. District Court against the Department of Housing and Urban Development (HUD) as well as against a number of private parties who hold (or held) varying interests in the property. This action is cognizable in federal court, appellants contend, because the mortgage for Garfield Hill had been insured since 1948 by the federal government pursuant to the National Housing Act,[1] and was therefore subject to HUD regulatory obligations. In December 1978, however, three months before this lawsuit was initiated, Garfield Hill's owner prepaid the full mortgage terminating the insurance and the government's erstwhile security or regulatory interest in the property.

The district court dismissed the action with prejudice on 2 August 1979. The court found that as to the government defendant, HUD, the lawsuit was moot because the mortgage prepayment had eliminated any federal interest or duty. Thereupon, with respect to the private parties, the court found that it was without subject-matter jurisdiction and dismissed those claims as well. Motions for summary disposition made to this court by both sides were denied on 25 January 1980.

We now affirm the district court, but rely on different grounds. We hold that the proper ground for dismissal was the appellants' failure to state a claim upon which relief could be granted.

## I. FEDERAL INSURANCE FOR THE GARFIELD HILL MORTGAGE

Section 608 of the National Housing Act[2] was enacted to address the housing needs of war veterans.[3] To stimulate the construc-

---

1. 12 U.S.C. § 1701 *et seq.* (1976).

2. 12 U.S.C. § 1743 (1976).

3. See Conf.Rep.No. 2136, 77th Cong., 2d Sess. 2 (1942).

tion of apartment complexes favoring veterans, Congress authorized the federal government to insure mortgages on property meeting certain relevant conditions. One condition for insurance eligibility under section 608 was the application of federal "regulations and procedures" to occupancy priorities and rents, etc., of the mortgaged property.[4]

Acting through the Secretary for Insurance, the government on 23 August 1948 endorsed a note executed by appellee Garfield Development Corporation, the owner-mortgagor. This endorsement provided mortgage insurance to the original lender, Riggs National Bank of Washington (and later, appellant Institutional Securities Corporation), guaranteeing payment in case of mortgagor's default. FHA regulations in effect on the date of FHA's endorsement, 23 August 1948, formed the contract of mortgage insurance between the FHA and the lender.[5] The regulations empower the Secretary of HUD (originally the Federal Housing Commissioner) to impose regulations on the mortgagor and, in particular, provide that the Secretary may acquire an interest in the mortgagor corporation by purchasing its preferred stock.[6] The government paid the Garfield Development Corporation 100 dollars for 100 shares of its preferred stock. Thus HUD was in position to exercise its discretion to regulate Garfield Hill within its authority under section 608.

For the most part mortgage payments proceeded fairly smoothly, so no demand for insurance benefits was ever made to HUD (or to the FHA, its predecessor agency). Consequently, neither the government nor the lender, for that matter, ever attempted to control the project, or acquire anything beyond a security interest in Garfield Hill.

Those security interests had themselves terminated in December 1978, several months before the complaint in this action was filed on 16 March 1979. In 1978 the mortgagor, Garfield Development Corporation, exercised its "prepayment privilege," making full payment to the lender of the remaining balance under the mortgage. Three days later, Garfield Development Corporation paid 100 dollars to HUD, thereby redeeming in full the preferred stock issued to that government agency. Paying off the mortgage naturally satisfied the lender and extinguished its security interest in the property. Similarly, prepayment terminated the government's contract for mortgage insurance.[7] In a sense, then, the jurisdictional predicate of governmental involvement may have evaporated before the case began.[8]

The applicable regulations state plainly that "[u]pon the termination of all obligations of the [Secretary] . . . all regulations and restriction of the mortgagor shall cease."[9] By redeeming HUD's preferred stock and making full payment of the mortgage, the government's obligations and restrictions over the mortgaged property were terminated.[10] Moreover, *prepayment* is itself contemplated within the federal

4. *See* 12 U.S.C. § 1743(b)(1)–(2) (1976). Moreover, "[t]he Secretary [of HUD] is authorized and directed to make such rules and regulations as may be necessary to carry out the provisions of this subchapter." *Id.* § 1742.

5. *See* 24 C.F.R. § 283.28 (1949). These regulations are now embodied in 24 C.F.R. Part 207 (1980).

6. *See* 12 U.S.C. § 1743(b)(1); 24 C.F.R. § 283.28 (1949).

7. *See* 24 C.F.R. § 207.253 (1980).

8. A lawsuit involving the same factual allegations as the case at bar was filed in the district court on 11 December 1978. The plaintiffs in that action, some of whom are also suing here, sought, *inter alia*, a temporary restraining order to enjoin the prepayment which had occurred three days earlier. The district judge dismissed this complaint for failure to state a federal claim. The judge stated, however, that plaintiffs might return to court if federal questions did exist. *Jones v. Harris*, Civil Action No. 78–2325 (D.D.C. 12 December 1978). Presumably, the plaintiffs did return, three months later, with this lawsuit.

9. 24 C.F.R. § 283.28 (1949).

10. *See* 12 U.S.C. § 1743(b)(1) (1976).

regulations.[11] Hence, the mortgagor may by paying off the loan cancel at anytime the contract for mortgage insurance, and thereby extinguish outside security interests, including HUD's.

## II. DISCUSSION

### A. *The Parties*

Real estate transactions usually involve a number of parties, each with distinct interests and obligations. If litigation ensues, it is rarely a two party case, but here the complaint named defendants whose links with the mortgaged property were remarkably attenuated. For instance, appellee Hessick Investment Corporation was sued in its "capacity" as a *prospective purchaser* of Garfield Hill. The deal, however, had never gone through, as both parties to the proposed sale agreed to forget it in October of 1978. The *former owner* of Garfield Development Corporation's *common stock*, Karl W. Corby & Company, Inc., was also sued. Corby removed itself from contact with Garfield Hill in December 1977 when it sold its stock to the various individuals, associations, and corporations who are the current stockholders of the Garfield Development Corporation. (The property itself has been owned by the Corporation at all times since 1948.) These parties, along with the Corporation, are all sued together as the landlord of Garfield Hill. And then, there is the crucial defendant, the Secretary of HUD. By insuring the Garfield Hill mortgage from 1948 through 1978, and by promulgating regulations pursuant to the National Housing Act, it is HUD as mortgage insurer which allegedly provides the federal jurisdictional link and the springboard for jurisdiction over the other private parties. The mortgagee, Institutional Securities Corporation, was the beneficiary of that mortgage insurance, and consequently was also sued by appellants.

We find that appellants' claims against the prospective purchaser, the former owner of the Corporation's stock, and the mortgagee are totally unwarranted, the product of legal inventiveness run riot. No cause of action has been stated, or could be at this time. Only the action against the landlord-owner of Garfield Hill and the Secretary of HUD is colorable at all. We turn now to consider the legal basis for the lawsuit against these two parties.

### B. *The District Court Decision*

In a short order entered on 2 August 1979 the district court dismissed the complaint, finding that allegations based on HUD regulatory authority were moot, and that the court was consequently without subject-matter jurisdiction over the nonfederal parties. Though we agree that the complaint cannot stand, we find that the district court was not without subject-matter jurisdiction to consider claims against the federal and private parties under the National Housing Act.[12] Interpretation of that Act is necessary to determine whether those claims are valid. The district court did not address the question of whether the plaintiffs had a private cause of action under the National Housing Act—if they did have one, then the possibility of a private *damages* remedy which would survive any termination of an insured or regulatory interest neatly disposes of the mootness argument. Thus we are compelled to decide the extent of judicial review over HUD's actions, and whether a private cause of action exists.[13]

---

11. *See* 24 C.F.R. §§ 282.14, 283.15 (1949); note 7, *supra.*

12. 28 U.S.C. §§ 1331, 1337 (1976). *See Davis v. United States Dep't of Housing,* 627 F.2d 942, 945, 946 n.1 (9th Cir. 1980).

13. *But see Jackson v. Lynn,* 506 F.2d 233, 237 (D.C.Cir.1974) (no damages action against the United States based on mortgage insurance provision of National Housing Act). As we hold that no private cause of action exists at all, we need not directly decide the damages question. The inchoate possibility of damages here is sufficient to undermine the mootness argument. *See Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978).

### C. Judicial Review of HUD's Functions Under Section 608

There is no provision for judicial review in the National Housing Act itself. We turn first, therefore, to the Administrative Procedure Act in search of a legal standard applicable to HUD's conduct here.[14]

■ Though HUD's conduct as mortgage insurer for veterans' housing is arguably committed exclusively to the agency's discretion and thereby exempted from judicial review,[15] we would reluctantly forgo review on this basis. Consideration is unnecessary, for in this case we run into a specific statutory obstacle to judicial review. The substance of appellant's complaint against HUD is that the agency failed to enforce its own regulations and exercise its power as a preferred shareholder in the Garfield Development Corporation for the protection of the project's tenants. Section 1743 of title 12 of the United States Code codified section 608 of the National Housing Act authorizing HUD to acquire such preferred stock.[16] Likewise, the Secretary's authority to promulgate regulations for federally insured veterans' housing derives from that same statutory section. In the Administrative Procedure Act we find that judicial review of "functions conferred by section[ ] . . . 1743 . . . of title 12" is explicitly excluded.[17] As the relevant regulations and any rights growing out of the preferred shareholder interest are all pursuant to section 1743, Congress has removed these functions from our review under the Administrative Procedure Act.[18]

In effect, then, our only source of, and standard for, review must spring from the substantive statute itself—the duties of the obligors and the rights of the beneficiaries as contemplated by the National Housing Act.[19] We proceed now to examine the question of a private right of action under the statute.

### D. Private Remedy Under the National Housing Act

The Act does not provide an express private cause of action—the statute's various intended beneficiaries are thus without an explicit remedy either against HUD or against any of the other private parties also involved in the statutory scheme.

■ Conceivably, however, it might be appropriate for this court to infer the existence of a private cause of action according to the principles of Cort v. Ash.[20] We find that the statute does not support a judicial inference that tenants in federally insured veterans' housing have a right to sue the government or these private parties in a federal court to force compliance with HUD

---

14. See Russell v. Landrieu, 621 F.2d 1037, 1042 (9th Cir. 1980).

15. 5 U.S.C. § 701(a)(2) (1976). See Falzarano v. United States, 607 F.2d 506, 513 (1st Cir. 1979):

> The discretionary nature of the Secretary's duties and the dual goals of assuring financial integrity of the project and maintaining reasonable rents for low and moderate income tenants require a flexibility and ability to deal individually with each project. Close judicial supervision of . . . the decision making process would impede agency action.

16. See notes 6–11 supra and accompanying text.

17. 5 U.S.C. § 701(b)(1)(H) (1976).

18. Whereas the APA surely applies to HUD actions under other statutory sections, see notes 12 & 14, supra, no cases have been cited to us showing any judicial review of § 1743 issues.

19. We are unable to accept the mootness theory adduced by the appellees. See note 13 supra. It is conceivable that HUD might have taken some action prior to the prepayment of the mortgage which could have affected its obligation as an insurer. Arguably, liability for some hypothetical insurance duty under the National Housing Act could have carried over beyond the termination of the mortgage. Appellants, on the other hand, have also advanced various theories which we are unable to accept. We find that appellants' arguments that HUD has violated various other statutory, constitutional, and contractual provisions are entirely without merit.

20. 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).

regulations.[21] We join the First Circuit in holding that mortgage insurance provided under the National Housing Act is an insufficient predicate for implication of a private cause of action.[22]

*Cort v. Ash* [23] outlines four factors indicative of an implied cause of action:

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," ...—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? ... Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? ... And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?[24]

The provision of the National Housing Act at issue [25] "neither creates federal rights in favor of any private party nor proscribes the behavior herein complained of." [26] Rather, what is clear is that the statute embodied Congress' hope that the possibility of federal mortgage insurance would encourage lenders to lend, builders to build, and developers to develop new housing that would culminate in a benefit for the war veterans. This was fairly complex legislation that created and relied on financial incentives to accomplish a welfare objective. Congress thereby induced private entrepreneurs to enter the housing market through investments in projects ultimately redounding to the advantage of prospective tenants who were also veterans. In fact, the codification of the mortgage insurance provisions for "section 608 housing" is in the "Banks and Banking" title of the United States Code, and not in the "Public Health and Welfare" title where other sections of the National Housing Act are codified.[27] Plainly, though, veterans and tenants are the vicarious beneficiaries of the Act.

They are not, however, the Act's only beneficiaries—obviously, the benefit of mortgage insurance operates directly in favor of the bankers, builders, and developers. To be sure, HUD has limited authority to regulate the housing projects whose mortgages it insures; this permits HUD to ensure that the projects will continue to be financially viable, and will not, therefore, require the government to pay out on its default obligations. Section 608 thus does not so "especially" benefit tenants that it can be said, under the first *Cort v. Ash* criterion, that the statute creates an enforceable duty running to tenants, which can be claimed by them as a matter of right.[28]

The second *Cort v. Ash* factor refers us to the presence or absence of a legislative intent to create a private remedy. We see

---

**21.** We note that while 12 U.S.C. § 1702 (1976), which states that the Secretary of HUD shall be authorized to "sue and be sued in any court of competent jurisdiction, State or Federal," may waive sovereign immunity, it does not, of its own force, create a private right of action. *See, e.g., Securities Investor Protection Corp. v. Barbour,* 421 U.S. 412, 420–21 n.3, 95 S.Ct. 1733, 1738–39 n.3, 44 L.Ed.2d 263 (1975).

**22.** *See Falzarano v. United States,* 607 F.2d 506 (1st Cir. 1979). *See also Jackson v. Lynn,* 506 F.2d 233 (D.C.Cir.1974). *Cf. Cedar-Riverside Assoc., Inc. v. City of Minneapolis,* 606 F.2d 254 (8th Cir. 1979) (holding that other provisions of the National Housing Act do not provide private rights of action).

**23.** 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).

**24.** *Id.* at 78, 95 S.Ct. at 2087 (citations omitted) (emphasis in original).

**25.** 12 U.S.C. § 1743 (1976).

**26.** *Falzarano v. United States,* 607 F.2d 506, 509 (1st Cir. 1979).

**27.** *See* 42 U.S.C. § 1441 *et seq.* (1976).

**28.** *Cf. Cedar-Riverside Assoc., Inc. v. City of Minneapolis,* 606 F.2d 254, 257 (8th Cir. 1979) (different section of National Housing Act benefits tenants particularly, but also benefits developers, etc.). We assume here, *arguendo,* that appellants as tenants—current and past, would have standing to raise whatever claims veterans might have under the statute.

here no indication that Congress intended a private right of action to emanate from the provision of mortgage insurance pursuant to the National Housing Act. Neither the statutory history nor the terms of the statute itself contradict this conclusion.[29] Without some palpable indication of legislative intent we would be most ill-advised to discover an implied private cause of action.[30]

Consistency with the overall legislative scheme is the third *Cort v. Ash* factor. Since a primary objective of the statute was to stimulate *the construction* of housing,[31] an implied cause of action giving tenants the right to sue HUD and private parties in the real estate market might *impede*, rather than promote, the construction of housing units.[32]

Whether the cause of action in question is traditionally relegated to state law is the fourth *Cort v. Ash* factor. Here too we must hold for the appellees. Without reflecting at all on the merits of appellants' claims, we are compelled to recognize that the stated claims are typical of the landlord-tenant relationship, local in character and generally reserved for resolution by the states.[33] Complaints of excessive rent, improper maintenance, and unlawful evictions are cognizable in the state courts, but have no basis for remedy under federal law, or at least not under section 608 of the National Housing Act which simply authorizes HUD to insure mortgages. The federal involvement here is minimal; it is insufficient for the purpose of authorizing private parties to require HUD to compel landlords, or of compelling the landlords directly, to utilize their property in particular ways.

HUD is granted authority in connection with the mortgage insurance provisions so that it may implement *national* housing policy, not administer in detail a particular privately owned housing project. That policy requires the financial viability of projects like Garfield Hill, and it is not clear at all that an implied private, *federal* cause of action by tenants against anyone would serve that policy. We therefore hold, on *Cort v. Ash* principles, that tenants in section 608 housing projects have no right of action to proceed against their landlord, against HUD, or against other private parties based simply on the mortgage insurance provisions of the National Housing Act.

## III. CONCLUSION

We do not here decide the merits of appellants' claims that they are the victims of unlawful evictions, illegal rents, and deficient maintenance, etc. These are charges which the local jurisdiction, the District of Columbia, may resolve according to its own laws. We hold simply that the National Housing Act does not harbor an implied right of action allowing tenants in housing developments whose mortgages have been insured by the federal government to sue the government or private parties for alleged breaches of landlord-tenant obligations. We thus affirm the dismissal of this action on the ground that appellants have failed to state a claim on which relief can be granted. We also find that we are without jurisdiction under the Administrative Procedure Act to review HUD's conduct with respect to regulations it has issued pursuant to 12 U.S.C. § 1743.

*Affirmed.*

**29.** *See Falzarano v. United States*, 607 F.2d 506, 510 (1st Cir. 1979); *Cedar-Riverside Assoc., Inc. v. City of Minneapolis*, 606 F.2d 254, 257–58 (8th Cir. 1979). *See also Touche Ross & Co. v. Redington*, 442 U.S. 560, 569–72, 575, 578, 99 S.Ct. 2479, 2485–87, 2488, 2490, 61 L.Ed.2d 82 (1979) ("the mere fact that § 17(a) was designed to provide protection for brokers' customers does not require the implication of a private damages action in their behalf") ("it suffices to say that in a series of cases since *Borak* we have adhered to a stricter standard for the implication of private causes of action").

**30.** *See* note 29 *supra.*

**31.** *See Falzarano v. United States*, 607 F.2d 506, 510 (1st Cir. 1979).

**32.** *See Cedar-Riverside Assoc., Inc. v. City of Minneapolis*, 606 F.2d 254, 258 (8th Cir. 1979).

**33.** *See Herian v. United States*, 363 F.Supp. 287 (D.D.C.1973).