899 A.2d 208

**Alan NEAL**

v.

**WELLS FARGO HOME MORTGAGE, INC.**

**No. 1751 Sept. Term, 2004.**

Court of Special Appeals of Maryland.

May 26, 2006.

748

Scott C. Borison (Douglas B. Bowman, Legg Law Firm, L.L.C., on the brief), Frederick, MD, for Appellant.

Mark D. Maneche (Michael Schatzow, Venable, L.L.P., on the brief), Baltimore, MD, for Appellee.

Panel: HOLLANDER, DEBORAH S. EYLER, and BARBERA, JJ.

BARBERA, Judge.

This appeal involves the Housing and Urban Development's ("HUD") mortgage servicing requirements. *See* 24 C.F.R. §§ 203.500 *et seq.* (1996). Those requirements were issued pursuant to the National Housing Act ("the Act"), 12 U.S.C. § 1701 (1934).[1] The issue before us is whether, notwithstanding the lack of a private right of action to enforce those regulations, a mortgagee can agree as a term of a deed of trust to comply with those requirements and, upon noncompliance, become liable to the mortgagor for breach of contract. Although we answer that question in the affirmative, we must remand this case so that the circuit court can decide whether the parties to this appeal had such an agreement.

Appellant, Alan Neal ("Neal"), has a residential mortgage loan that appellee, Wells Fargo Home Mortgage, Inc. ("Wells Fargo"), services. A Deed of Trust ("Deed") secures the loan, and the Federal Housing Authority ("FHA") insures it. For purposes of this appeal, it is necessary to know only that Neal defaulted on the mortgage and Wells Fargo initiated foreclosure proceedings. Neal believes that Wells Fargo breached the terms of Paragraph 9(d) of the Deed, which refers to HUD foreclosure regulations. Paragraph 9(d) provides:

**Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

---

1. Both parties to this appeal cite the National Housing Act as 42 U.S.C. § 1441 (1949), which is the citation for the Housing Acts of 1949, a related HUD program to enforce its national housing policy of assisting slum-clearance, community development, and redevelopment programs. The correct citation of law, from which HUD's mortgage servicing power derives, is the National Housing Act, 12 U.S.C. §§ 1701 *et seq.*

Although the regulations referred to in that paragraph are not identified, the parties agree that they are HUD's mortgage servicing requirements.

Neal filed a complaint against Wells Fargo in the Circuit Court for Frederick County for breach of contract and for a declaratory judgment.[2] Wells Fargo countered with a motion for summary judgment, arguing that the National Housing Act and the mortgage servicing requirements promulgated thereunder do not provide a private cause of action to enforce compliance with the regulations. Neal opposed that motion and filed his own summary judgment motion, again contending that Wells Fargo breached the provision in paragraph 9(d) of the Deed.

The parties' motions came on for a hearing on September 7, 2004. At the conclusion of the hearing, the court announced its intention to grant summary judgment in favor of Wells Fargo, stating that "the regulations which were set out and reflected in the handbook[3] are there for the regulatory scheme and not for the benefit of the individual borrower." Consequently, the court reasoned, there was "not a private cause of action under th[o]se specific provisions...." Two days later, the court issued an order granting Wells Fargo's summary judgment motion and ordering the Clerk to enter judgment in favor of Wells Fargo and against appellant. This timely appeal followed the docketing of that order.

Neal presents two questions on appeal, which we have condensed into one: Was the circuit court legally correct in granting summary judgment in favor of Wells Fargo? For

---

**2.** Neal sought a declaratory judgment, but the relief he requested is to prevent Wells Fargo from initiating foreclosure proceedings or charging or collecting foreclosure-related fees until such time as Wells Fargo complies with HUD servicing requirements. We agree with Wells Fargo that the claim is not for declaratory relief, but rather for injunctive relief.

**3.** The court was referring to the HUD Handbook, which contains the mortgage servicing requirements that are codified in the Code of Federal Regulations.

the following reasons, we vacate the judgment and remand for further proceedings.

## DISCUSSION

■ The circuit court determined that Wells Fargo was entitled to summary judgment because Neal has no private cause of action to enforce the HUD-promulgated mortgage servicing requirements to which paragraph 9(d) of the Deed refers. Neal contends that the court's ruling is wrong as a matter of law. He argues that incorporation of the HUD regulations into the Deed provides him with the right to enforce the regulations in a breach of contract action.[4] Directing us to the language of paragraph 9(d) that "[t]his Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary[,]" Neal asserts that Wells Fargo breached the terms of the Deed by initiating foreclosure without first complying with the relevant HUD regulations.

Wells Fargo counters that the HUD servicing requirements on which Neal's complaint is premised do not permit a private right of action against Wells Fargo. Wells Fargo further argues that Neal's "attempt to plead his claim as a breach of contract claim [and a claim for declaratory relief] does not allow him to circumvent the clear law prohibiting private enforcement of HUD regulations." Therefore, Wells Fargo maintains, the court properly granted summary judgment in its favor.

■■ A motion for summary judgment may be granted when the court determines that "there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law." Md. Rule 2–501(a). These are legal questions; consequently, the standard by which we

---

4. The Deed is, among other things, a contract. *See Riggs Nat'l Bank of Washington, D.C. v. Wines,* 59 Md.App. 219, 226, 474 A.2d 1360 ("A deed of trust, among other things, is a contract, and its language is to be construed in accordance with the law of contracts."), *cert. denied,* 301 Md. 43, 481 A.2d 802 (1984).

review the decision is "whether the trial court was legally correct." *Converge Servs. Group, LLC v. Curran,* 383 Md. 462, 476, 860 A.2d 871 (2004) (citation and internal quotation marks omitted). As a general rule, this Court limits its review of the grant of summary judgment to the grounds relied upon by the trial court. *See Ross v. State Bd. of Elections,* 387 Md. 649, 667, 876 A.2d 692 (2005). When, however, an "alternative ground is one upon which the circuit court would have had no discretion to deny summary judgment," we may affirm a grant of summary judgment "for a reason not relied on by the trial court." *Vogel v. Touhey,* 151 Md.App. 682, 706, 828 A.2d 268 (citation and internal quotation marks omitted), *cert. denied,* 378 Md. 617, 837 A.2d 927 (2003). In reviewing the court's grant of summary judgment, "[w]e review the record in the light most favorable to the nonmoving party and construe any reasonable inferences that may be drawn from the facts against the moving party." *Myers v. Kayhoe,* 391 Md. 188, 203, 892 A.2d 520 (2006).

Neither party asserts on appeal that this case involves a dispute of material fact, and we shall assume, as we must for purposes of this opinion, that Wells Fargo did not comply with one or more of the HUD mortgage servicing requirements. Also important for present purposes is that Neal does not dispute Wells Fargo's claim that there is no private right of action to enforce the HUD regulations. Neal states in his Reply Brief:

> [Wells Fargo] cites a number of cases for the proposition that the HUD regulations do not provide a private cause of action. However, none of the cases cited by [Wells Fargo] are dispositive of the issue before this court. The issue before this court is whether or not parties can contract to require compliance with specific regulations.

Because Neal does not attack Wells Fargo's argument of a lack of a private right of action to enforce the regulations, we need not decide that issue. We shall assume that Wells Fargo and the circuit court are correct that no such private cause of action will lie, as the case law clearly appears to hold. *See Burroughs v. Hills,* 741 F.2d 1525, 1531–32 (7th Cir.1984)

(citing numerous instances of "[e]fforts to enforce implied causes of action under the National Housing Legislation or the HUD Handbook," all of which have failed in appellate courts), *cert. denied,* 471 U.S. 1099, 105 S.Ct. 2321, 85 L.Ed.2d 840 (1985); *Shivers v. Landrieu,* 674 F.2d 906, 911–12 (D.C.Cir. 1981) (finding that the National Housing Act does not provide for an implied private right of action); *Falzarano v. United States,* 607 F.2d 506, 509–11 (1st Cir.1979) (stating that the National Housing Act does not provide expressly for a private cause of action, and, applying the factors set forth in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), holding that there is no implied private right of action); *Cedar– Riverside Assocs., Inc. v. City of Minneapolis,* 606 F.2d 254, 258–59 (8th Cir.1979) (holding that related HUD programs under the Housing Act of 1949, 42 U.S.C. § 1441, did not create a private right of action under the circumstances); *Roberts v. Cameron–Brown Company,* 556 F.2d 356, 360 (5th Cir.1977) (concluding that there is no implied private right of action in the National Housing Act).

The court in this case granted summary judgment in favor of Wells Fargo solely on the ground that there is no private right of action to enforce the HUD regulations. The court evidently did not view as a separate question the issue that Neal advanced, *i.e.,* whether, notwithstanding the lack of a private right of action, the parties contracted to require compliance with HUD's mortgage servicing requirements. Neal insists that the issue is one of contract construction and that the court erred by failing to consider it when ruling on Wells Fargo's summary judgment motion. He maintains that remand is necessary to permit litigation of that issue.

Wells Fargo sees Neal's claim for breach of contract and declaratory relief as foreclosed by the lack of a private right of action to enforce HUD's requirements. As a consequence, Wells Fargo argues, Neal should not be permitted "to circumvent the clear law prohibiting private enforcement of HUD regulations."

We agree with Neal that remand is necessary for the court to consider whether the parties actually agreed, as a term of the Deed, that Wells Fargo would comply with the applicable HUD mortgage servicing regulations before initiating foreclosure proceedings or taking any other action against Neal. The two cases to which Neal directs us, *Wells v. Chevy Chase Bank, F.S.B.*, 377 Md. 197, 832 A.2d 812 (2003), *cert. denied*, 541 U.S. 983, 124 S.Ct. 1875, 158 L.Ed.2d 485 (2004) and *College Loan Corp. v. SLM Corp.*, 396 F.3d 588 (4th Cir.2005), support our conclusion.

*Wells* involved an effort by credit card holders to sue two federally insured banks that issued the cards for breach of a Cardholders Agreement. The credit card holders, the appellants, alleged that the banks, the appellees, failed to comply with the form of notice that is required, under Subtitle 9 of the Commercial Law Article ("CL") of the Maryland Code, when a cardholder agreement is amended.[5] *See* 377 Md. at 199–200, 832 A.2d 812. The appellants maintained that the notice provision contained in CL Subtitle 9 governed the parties' agreement. *See id.* The appellants relied on a section of the Agreement captioned "Governing Law," which referred to both CL Subtitle 9 and "applicable federal law." *Id.* at 199, 832 A.2d 812. The parties agreed that state laws purporting to regulate the banks' lending activities are preempted by the Homeowner's Loan Act, 12 U.S.C. § 1464(a) ("HOLA"), and its implementing regulations, and that HOLA generally preempted CL Subtitle 9. *See id.* The appellants, however, "characterize[d] the reference to Subtitle 9 in the Cardholder Agreement as a provision in a contract, which, notwithstanding federal preemption, defines a particular aspect of the relationship between the parties, the manner in which notice is to be given when the Cardholder Agreement is amended." *Id.* at 199–200, 832 A.2d 812. Because, in the appellants' view, the banks had failed to satisfy Subtitle 9's notice requirements,

---

5. Md.Code (1975, 2000 Repl.Vol.), §§ 12–901 to 12–924 of the Commercial Law Article.

the banks were in breach of the terms of the Cardholder Agreement. *See id.* at 200, 832 A.2d 812.

The circuit court granted the banks' motion to dismiss, reasoning that the appellants had "no basis for claiming that they entered into a private agreement incorporating a complex and detailed state regulatory scheme." *Id.* at 207, 832 A.2d 812. The Court of Appeals disagreed and reversed the judgment. *See id.* at 200, 832 A.2d 812.

The *Wells* Court declared at the outset of the opinion that "any attempt to enforce [the provisions of Subtitle 9] as a matter of State law and as additional requirements of a credit agreement with a federal savings association must fail[,]" as preempted by the federal law. *Id.* at 215, 832 A.2d 812. The Court also recognized that HOLA and its implementing regulations expressly exempt from preemption "basic state laws such as state uniform commercial codes and state laws governing real property, contracts [or] torts." *Id.* at 216, 832 A.2d 812. (citation and internal quotation marks omitted).

The Court observed that, even though "Subtitle 9 *qua* Subtitle 9 is preempted[,] . . . the appellants pursue [the banks] on a breach of contract theory. The issue that must be resolved, therefore, is whether the cause of action, or at least, the basis for the claimed breach, is preempted." Id. at 215, 832 A.2d 812. In that regard, the Court declared:

Whether the appellants' claims are preempted and whether the appellees [the banks] contracted to comply with Subtitle 9 are separate and different questions, requiring different analyses. The former is a defense requiring an analysis of federal law and the determination of the impact the relationship of the parties has on the ability of that law to fulfill its intended goal. The latter involves contract interpretation, discerning the parties' intent, either actual or presumed. Contract interpretation, unlike the question of federal preemption, is a matter of state law.

*Id.* at 224, 832 A.2d 812.

The Court held that the appellants were not foreclosed from bringing a cause of action against the banks for breach of

contract. The Court reasoned that the appellants' claim fell within the exemption under HOLA's implementing regulations permitting state law claims that incidentally affect matters of "contract and commercial law" in lending operations. *See id.* at 215, 225, 227, 229, 832 A.2d 812; *see also Heist v. E. Sav. Bank, FSB.,* 165 Md.App. 144, 157, 884 A.2d 1224 (2005) (discussing *Wells*); *Chaires v. Chevy Chase Bank,* 131 Md. App. 64, 79, 82, 748 A.2d 34 (stating that "parties [can]not elect to have state law govern over federal law," although state laws still may be effective if not directly preempted), *cert. denied,* 359 Md. 334, 753 A.2d 1031 (2000).

The *Wells* Court remanded the case. The Court directed the circuit court to determine, by application of the familiar canons of contract construction, "what the agreement means, the intent of the parties in entering into this agreement, Chevy Chase's intent in drafting [the agreement] and, in particular, the scope and extent of the parties' obligations and rights under it." *Id.* at 231–32, 832 A.2d 812.

Wells Fargo insists that *Wells* does not support Neal's claim because that case involved issues of federal preemption. Wells Fargo is correct that federal preemption is a central theme of that decision. *Wells* nonetheless informs our decision in the present case because it stands for the proposition that a contract interpretation issue (distinct from the preemption issue) is "a question of state law," and that "Maryland law recognizes that parties may agree to define their rights and obligations by reference to documents or rules external to the contract." *Id.* at 229, 832 A.2d 812. As the *Wells* Court noted, CL Subtitle 9 "is [invoked] in this case only because the agreement between the parties refer to it and do so in the context of the notice to be given in the event that the agreement is amended." *Id.* at 231, 832 A.2d 812.

*College Loan Corp.,* upon which Neal also relies, further assists our analysis. In that case, the Court of Appeals for the Fourth Circuit held that College Loan Corp., a student loan consolidation lender, could use SLM's alleged violations of the Higher Education Act ("HEA"), and regulations promul-

gated thereunder, to establish its state law tort and breach of contract claims against SLM's affiliates, collectively referred to as Sallie Mae. 396 F.3d at 591–92, 598–99. The Court reached that conclusion notwithstanding that there was no private right of action to enforce the HEA standards and regulations.

The *College Loan Corp.* Court underscored that the parties to the agreement had "voluntarily included federal standards (the HEA) in their bargained-for private contractual arrangement[,]" and *"expressly agreed* to comply with the HEA." *Id.* at 598. The Court pointed out that "the Supreme Court (and this Court as well) has recognized that the availability of a state law [tort or contract] claim is even *more* important in an area where no federal private right of action exists." *Id.* at 598. Furthermore, "the existence of the Secretary's exclusive authority to enforce the HEA and its regulations does not, standing alone, mandate the conclusion that a state law claim which relies on HEA violations for support 'obstructs' the federal scheme." *Id.* at 599. The Court elaborated upon the point, stating:

Sallie Mae maintains, in the alternative, that the district court's Pre-emption Ruling was nonetheless correct because College Loan is not entitled to pursue an HEA private action in the guise of a state law claim. However, the lack of a statutory private right of action does not, in and of itself, bar a plaintiff from relying on violations of that statute as evidence supporting a state law claim. *See Medtronic v. Lohr,* 518 U.S. 470, 487, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (rejecting as "implausible" contention that lack of private right of action precluded state common law remedies). Furthermore, we have specifically recognized that, absent preemption, an injured plaintiff may sue under state law seeking redress for a violation of a federal regulation.

*Id.* at 599 n. 9.

The Court concluded that Sallie Mae could not rely on its lack of a private right of action rationale to defeat College

Loan Corp.'s cause of action. The Court explained that, although certain of the federal regulations "are intertwined with the questions being litigated here, College Loan alleges garden-variety contract and tort claims," albeit claims that are supported by violations of HEA regulations. *Id.*

■ Both *Wells* and *College Loan Corp.* lead us to conclude that, notwithstanding the lack of a private right of action to enforce the HUD mortgage servicing regulations, Neal is not foreclosed from basing his cause of action for breach of contract and injunctive relief on the claim that Wells Fargo contracted with Neal to comply with those regulations. The circuit court therefore erred by granting summary judgment in favor of Wells Fargo solely on the ground that there is no private right of action to enforce the HUD mortgage servicing requirements. We shall vacate that judgment accordingly.

That Neal may bring the action does not end the matter, however. Whether Neal successfully can sue Wells Fargo depends on whether the parties agreed as a term in the Deed that Wells Fargo would comply with the HUD mortgage servicing requirements before seeking to foreclose upon the mortgage or attempting any other action against him. *See Wells,* 377 Md. at 231–32, 832 A.2d 812.

Not surprisingly, *Wells Fargo* advances numerous arguments that the Deed contains no such agreement. Wells Fargo argues that paragraph 9(d) of the Deed merely "states [ ] that a lender is not excused from compliance with the acceleration and foreclosure 'regulations of the Secretary' by anything contained in the Deed of Trust itself." Wells Fargo also maintains that paragraph 9(d) "does *not* state or even suggest ... that the borrower has the right to sue the lender under the Deed of Trust for an alleged violation of HUD servicing regulations." In that regard Wells Fargo points out that the Deed "is an FHA-mandated form that a lender must use in connection with an FHA-insured loan like Mr. Neal's," and, "[h]ad the drafters of this Deed of Trust—*i.e.,* HUD/FHA—intended it to create such a private right of action, they could have and most certainly would have included in the

document clear language to that effect." Furthermore, Wells Fargo states that construction of the Deed to create a breach of contract action would permit a "backdoor method of suing for damages to enforce HUD loan servicing regulations...." And, Wells Fargo insists that "the remaining language of the Deed of Trust clearly does not envision a breach of contract action for alleged violation of HUD regulations." Finally, Wells Fargo contends that imposing liability on it for violating the HUD regulations, in the absence of any such determination by the HUD Secretary, "would create a risk of inconsistent state and federal findings."

We have said that we generally cannot affirm a circuit court's grant of summary judgment for reasons other than those relied upon by the court. *See Ross,* 387 Md. at 667, 876 A.2d 692. The court in this case did not base its summary judgment decision on any of the arguments that Wells Fargo advances for why the terms of the Deed do not obligate it to comply with the HUD regulations. Consequently, we shall not consider those arguments at this juncture.

We shall remand the case for further proceedings. As the Court of Appeals directed in *Wells,* we direct the circuit court to decide on remand, by application of the canons of contract construction, whether the parties agreed as a term of the Deed that Wells Fargo would comply with the HUD mortgage servicing requirements before initiating foreclosure or any other related action against Neal.

**JUDGMENT VACATED. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**