**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 18-3829
_____

CAROL LLOYD,
                         Appellant

v.

NEW JERSEY HOUSING AND MORTGAGE FINANCE AGENCY;
CENLAR FEDERAL SAVINGS BANK (FSB),
d/b/a Central Loan Administration and Reporting;
ANTHONY L. MARCHETTA, in his official capacity as executive director,
New Jersey Housing and Mortgage Finance Agency
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 1-17-cv-05369)
District Judge:  Honorable Renée M. Bumb
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 22, 2020

Before: KRAUSE, MATEY and ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: February 3, 2021)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Carol Lloyd, proceeding pro se, appeals from an order of the United States District Court for the District of New Jersey dismissing her complaint. For the following reasons, we will affirm.

In 1996, Lloyd obtained a Federal Housing Administration (FHA) loan, which was evidenced by a promissory note and secured by a mortgage on property located in Winslow Township, New Jersey. Defendant New Jersey Housing Mortgage and Finance Agency (NJHMFA) holds the Note and Mortgage (N&M) as the lender, and defendant Cenlar Federal Savings Bank (Cenlar) services the mortgage.[1] In 2009, Lloyd was delinquent in making payments due under the N&M. Cenlar filed a foreclosure complaint in 2013 in the New Jersey Superior Court, Chancery Division.[2] Lloyd contested the matter arguing, in part, that NJHMFA had not complied with 24 C.F.R. § 203.604(b), a HUD regulation which required it to have a face-to-face meeting with Lloyd prior to initiating a foreclosure proceeding.[3] This regulatory mandate was

_____

[1] The mortgage is insured by the Federal Housing Administration (FHA) pursuant to the National Housing Act (NHA), 12 U.S.C. §§ 1701 et seq. Congress delegated authority to the Secretary of the United States Department of Housing and Urban Development (HUD) to promulgate rules and regulations to administer the FHA lending program. See 12 U.S.C. § 1715b.

[2] A prior foreclosure complaint, filed in July 2010, was dismissed.

[3] Pursuant to 24 C.F.R. 203.604, "[t]he mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. If default occurs in a repayment

2

incorporated into the N&M. The Chancery Court granted summary judgment to Cenlar and transferred the matter to the Foreclosure Unit of the New Jersey Superior Court. The matter was eventually dismissed for failure to prosecute. In May 2017, the Chancery Court granted Cenlar's motion to reinstate the foreclosure action.

In 2017, while that foreclosure action was pending, Lloyd filed the underlying complaint against the NJHMFA, its executive director, Anthony L. Marchetta, and Cenlar. The suit raised seven claims stemming from the acceleration and foreclosure of her mortgage. At a hearing on the complaint in 2018, the District Court converted the Defendants' motion to dismiss to a summary judgment motion pursuant to Fed. R. Civ. P. 56 and indicated its intention to dismiss the complaint without prejudice. The Court explained that, to the extent Lloyd sought injunctive relief in the form of an order directing the defendants to stop the foreclosure, the case was moot because the foreclosure proceeding had since been dismissed. It also determined that the claims were subject to dismissal on various grounds, including that they were barred by the Rooker-

---

plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced . . ." The regulations make clear that "[i]t is the intent of [HUD] that no mortgagee shall commence foreclosure or acquire title to a property until the requirements of this subpart have been followed." 24 C.F.R. § 203.500. In particular, "[b]efore initiating foreclosure, the mortgagee must ensure that all servicing requirements of this subpart have been met." 24 C.F.R. § 203.606(a).

<u>Feldman</u> doctrine,[4] issue/claim preclusion, or sovereign immunity. The Court entered an order on November 29, 2018, dismissing the matter in its entirety without prejudice, and permitting 30 days for plaintiff to file an amended complaint "as outlined in the Court's opinion on the record." This appeal ensued.[5]

Lloyd's first five claims seek relief based on defendant NJHMFA's or Marchetta's failure to comply with mortgage servicing requirements under 24 C.F.R. § 203.604 prior to accelerating her loan and initiating foreclosure proceedings. Defendants argued that under the National Housing Act, 12 U.S.C. § 1701, et seq., there is no private right of action available to a mortgagor for a mortgagee's noncompliance. Lloyd acknowledged that the regulation itself does not authorize an express right of action; however, she maintained that the incorporation of the pre-foreclosure requirements of 24 C.F.R.

---

[4] See <u>D.C. Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983); <u>Rooker v. Fid. Tr. Co.</u>, 263 U.S. 413 (1923).

[5] We directed a limited remand to the District Court for the purpose of entering a final order dismissing the complaint with prejudice, as it had expressed its intent to do if the complaint was not amended within the allotted time. The District Court's October 14, 2020 dismissal order is final and appealable, and we have jurisdiction to review it pursuant to 28 U.S.C. § 1291. See <u>Cape May Greene, Inc. v. Warren</u>, 698 F.2d 179, 184-85 (3d Cir. 1983) (holding that a premature notice of appeal can ripen upon entry of a final judgment). Our review of the dismissal of the amended complaint is plenary, <u>see</u> <u>Maiden Creek Assocs. v. U.S. Dep't of Transp.</u>, 823 F.3d 184, 189 (3d Cir. 2016) (failure to state a claim); <u>Tobak v. Apfel</u>, 195 F.3d 183, 185 (3d Cir. 1999) (lack of subject matter jurisdiction), and we may affirm on any ground supported by the record, <u>see</u> <u>Oss Nokalva, Inc. v. European Space Agency</u>, 617 F.3d 756, 761 (3d Cir. 2010).

§ 203.604 into the N&M as "conditions precedent" to foreclosure created a private right of action to enforce the regulations. Amend. Compl. p. 22 at ¶¶ 102, 103. According to Lloyd, "because HUD requires this language to be incorporated into the [N&M] which secure its federally insured loans, (24 C.F.R. § 201.17(a)), doing so makes these regulations enforceable by borrowers . . . " Id. at ¶ 117. We agree that these claims were subject to dismissal because Lloyd does not have a private right to enforce the regulation.

Courts may recognize a private right of action, where not expressly provided by Congress, in two ways: either implied in a statute or under 42 U.S.C. § 1983. Three Rivers Ctr. for Indep. Living v. Hous. Auth. of Pittsburgh, 382 F.3d 412, 421 (3d Cir. 2004). The inquiries are "separate but overlapping" in one key respect – both require a threshold finding that Congress intended to create a personal right. Id. ("Congress's creation of a personal right is necessary to the existence of both an implied right of action and a right of action under Section 1983."). Lloyd argues that she has a personal right, and thus a basis for a private suit, under 24 C.F.R. § 203.604 because it "grants an unambiguously conferred right to FHA mortgagors to meet-face-to face with their lender prior to the acceleration and foreclosure of their FHA loan." Amend. Compl. at 20. She is mistaken. The source of a personal right must come from the enabling statute, not from the regulation, because "an agency's rulemaking power cannot exceed the authority granted to it by Congress." Three Rivers Ctr., 382 F.3d at 424; Alexander v. Sandoval,

5

532 U.S. 275, 291 (2001) ("[T]he language of the statute and not the rules must control.").

Pursuant to the National Housing Act, the FHA was created to promote affordable home ownership by providing mortgage insurance to private lenders to encourage their entry into the low and moderate-income housing market. See generally United States v. Neustadt, 366 U.S. 696, 709 (1961) (noting that "the fundamental design" of the NHA is to create a system of mortgage repayment insurance). The statutory scheme, as relevant here, deals with the regulation and oversight of mortgagees, not the protection of mortgagors. The statute includes a regulatory enforcement scheme to ensure mortgagees' compliance with its provisions and regulations, including the establishment of a Mortgagee Review Board authorized to take action against noncompliant mortgagees. See 12 U.S.C. § 1708(c). The fact that Congress authorized the Board to hold mortgagees accountable for failure to follow regulations suggests that it did not intend to give mortgagors the power to do so. Sandoval, 532 U.S. at 289 ("statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons'"). There is simply no "rights creating" language in the NHA which would give rise to an enforceable duty to the mortgagor on the part of the lender. See Moses v. Banco Mortg. Co., 778 F.2d 267, 272 n.2 (5th Cir. 1985) (joining other circuit courts in holding that "the Housing Act and regulations promulgated thereunder . . . [do not] create a right of action for private parties

6

who wish to sue to enforce the statute or regulations") (citing, inter alia, Falzarano v. United States, 607 F.2d 506, 509 (1st Cir. 1979) (holding that the NHA does not grant federally-insured housing project tenants the right to sue for impermissible charges); Shivers v. Landrieu, 674 F.2d 906, 910-11 (D.C. Cir. 1981) ("mortgage insurance provided under the [NHA] is an insufficient predicate for implication of a private cause of action")). Accordingly, Lloyd's claims for violation of 24 C.F.R. § 204.603 (Counts I -V) were properly dismissed.[6]

Lloyd's remaining two claims[7] are against Cenlar for alleged violations of the Real Estate Settlement Practices Act (RESPA) based on its failure to adequately evaluate and respond to her loss mitigation applications as required by "Regulation X," 12 C.F.R. § 1024.41. Congress has explicitly authorized a private right of action for a borrower to enforce RESPA and its regulations, including Regulation X, against a loan servicer. See id. § 1024.41(a); 12 U.S.C. § 2605(f). The District Court determined that the RESPA claims were subject to dismissal because Lloyd failed to sufficiently plead damages. Hearing Tr. at 39-40. We agree.

Courts have recognized that "damages are an essential element in pleading a RESPA claim." Renfroe v. Nationstar Mortg., LLC, 822 F.3d 1241, 1246 (11th Cir. 2016) (citing cases). The statute provides for actual damages which stem "as a result of"

---

[6] To the extent that Lloyd sought to present a due process challenge to the state foreclosure action, the claim was moot because the action is no longer pending.

the servicer's RESPA violation and "any additional damages . . . in the case of a pattern or practice of noncompliance with the requirements of [the statute] not to exceed $2,000." 12 U.S.C. § 2605(f)(1). There must be a "causal link between the alleged violation and the damages." Renfroe, 822 F.3d at 1246.

In Count VI of her complaint, Lloyd alleged that Cenlar failed to notify her that information was missing from her loss mitigation application – as required by Regulation X – before denying it as incomplete. We agree that this claim was subject to dismissal as Lloyd did not allege any actual damage as a result of the alleged violation.

In Count VII, Lloyd asserted that Cenlar has never responded to her second loss mitigation application after acknowledging that it was complete, in violation of 12 C.F.R. § 1024.41(c)(1). As a result, she claims to have lost the right to a direct appeal under 12 C.F.R. § 1024.41(h). She then alleged generally that Cenlar "has an egregious history" of failing to comply with servicing requirements as required by 12 U.S.C. § 2605. She included a "summary" of "Qualified Written Requests (QWRs)" from 2010 to 2012 which Cenlar allegedly failed to "acknowledge, investigate or respond." Amend. Compl. at 39-41; see 12 U.S.C. § 2605(e)(1)(B). Lloyd maintained that this established a pattern of "egregious servicer behavior and intentional failure to comply with the servicing requirements" under § 2605, entitling her to "maximum damages." She further alleged that she "experienced considerable stress, depression, and migraine headaches over all

---

[7] Lloyd voluntarily withdrew her claim that was based on a federal criminal statute.

8

the intentional deception from the servicer, and incurred expense in the applications for loss mitigation." Amend. Compl. at 41, ¶ 193.

We agree with the District Court that, even construing Lloyd's pro se amended complaint liberally, see Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003), it fails to state a valid RESPA claim. As the defendants argued in their motion to dismiss, the QWRs which are the basis for Lloyd's "pattern or practice" damages claim were written well outside of the three-year statute of limitations for RESPA claims.[8] See 12 U.S.C. § 2614; see also Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (noting that a statute of limitations defense may be raised in a motion to dismiss where the defense is apparent on the complaint's face). In response, Lloyd insists that, because she is not raising claims for compliance violations stemming from the QWRs, the timing of the requests is irrelevant. But damages must be causally linked to the violations, and this "pattern or practice" of noncompliance proffered by Lloyd occurred outside the limitations period. Because Lloyd did not sufficiently link the remaining violation – the failure to respond to her second loss mitigation application – to any actual compensable damage,[9] the claim was properly dismissed.[10]

---

[8] Lloyd drafted the pleadings pro se. She was represented by counsel only at the hearing on the motion to dismiss.

[9] Lloyd's costs in preparing the loss mitigation application do not accrue "as a result of the failure" of Cenlar to comply with any provision of the Act. 12 U.S.C. § 2605(f).

[10] Notably, Lloyd was represented by counsel at the hearing for the motion to dismiss,

Based on the foregoing, we will affirm the District Court's judgment.

---

where the Court advised that the complaint insufficiently pleaded damages for purposes of the RESPA claims; Lloyd elected not to amend the complaint.